UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LARGE AUDIENCE DISPLAY SYSTEMS, LLC | § § § | |
| vs. | § § § § | CASE NO. 2:09-CV-356-TJW-CE |
| TENNMAN PRODUCTIONS, LLC, et al. | § | |

## MEMORANDUM OPINION AND ORDER

**I.  BACKGROUND**

In November of 2009, Plaintiff brought the present action against Tennman Productions, LLC ("Tennman"), Justin Timberlake ("Timberlake"), The Los Angeles Lakers, Inc. ("the Lakers"), Britney Touring, Inc. ("Britney Touring"), and Britney Spears ("Spears"), and later amended its complaint to include Steve Dixon ("Dixon") and Musical Tour Management, Inc. ("MTM") (collectively, "Defendants").[1] Plaintiff alleges that Defendants infringe United States Patent No. 6,669,346 ("the '346 patent"). On March 12, 2010, Defendants filed the present motion seeking transfer to the Central District of California, arguing that the Central District of California would be a clearly more convenient venue for all parties (Dkt. No. 46). The court, having considered the venue motion and the arguments of both parties, GRANTS Defendants' motion to transfer venue because the balance of the "private" and "public" forum non conveniens factors demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by Plaintiff. *See In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir.

---

[1]  Pussycat Dolls LLC also joined in this motion, but have since been dismissed.

2008) (en banc).  Because the court has granted Defendants' motion to transfer, the court DENIES all pending motions (Dkt. Nos. 50, 51, and 78) as moot.

## II.    FACTUAL SUMMARY

The '346 patent pertains to entertainment technologies for projecting images into cylindrical screens for very large audiences, such as at sporting events or musical concerts held in large venues.  Plaintiff alleges that Tennman, the Lakers, Britney Touring, Spears, and Timberlake use systems that infringe the '346 patent in their performances and have used these systems all over the country.  Plaintiff does not contend that any infringing activity occurred in the Eastern District of Texas.

Plaintiff is a Texas corporation, which was formed two days before the filing of the present action.  Little, if any, business activity occurs at the Tyler office Plaintiff rented, and Defendants contend that Plaintiff had not yet obtained the keys to its Tyler office at the time this suit was filed.  Plaintiff does, however, send mail from the Eastern District of Texas and pays utilities and other incidental expenses associated with its office in Tyler, Texas.  Plaintiff was formed by the inventor of the '346 patent − Mr. Darrell Metcalf.  Mr. Metcalf resides in the Central District of California.

Plaintiff alleges no connection between the Eastern District of Texas and any defendant beyond the sale of tickets to persons residing in the Eastern District − these tickets, however, were to performances occurring outside of the Eastern District in which the accused infringing device was used.

Defendant Tennman is a Delaware corporation. It is unclear where its principal place of business is located.[2] Tennman frequently conducts business in the Central District of California and has never conducted business relevant to the '346 patent in the Eastern District of Texas.

Defendant Timberlake maintains residences in New York City and Los Angeles, California. He frequently conducts business in the Central District of California and has never conducted business relevant to the '346 patent in the Eastern District of Texas.

Defendant Spears and her touring company are residents of Louisiana. Ms. Spears also maintains residences in New York and Florida. She and her touring company frequently conduct business in the Central District of California and have never conducted business relevant to the '346 patent in the Eastern District of Texas.

The Lakers are a California corporation with its principal place of business in El Segundo, California. The Lakers are headquartered and frequently conduct business in the Central District of California and have never conducted business relevant to the '346 patent in the Eastern District of Texas.

Defendant Dixon contends he is a California resident. He designed and produced the allegedly infringing devices in his Palm Springs, California home. Although Dixon also has contacts with El Paso, Texas and Houston, Texas, he has no contacts with the Eastern District of Texas. Plaintiff contends Mr. Dixon is actually a resident of El Paso, Texas.

Defendant MTM is a Nevada corporation. It contends it has a principal place of business in Connecticut. MTM regularly conducts business in the Central District of California and has

---

[2] Plaintiff's complaint alleges Tennman's principal place of business is unknown, which Tennman admits in his answer. It is, therefore, unclear where Tennman's principal place of business is located.

no contacts with the Eastern District of Texas. Plaintiff contends that MTM's principal place of business is actually in El Paso, Texas.

Substantially all development work relating to the accused devices, as well as substantial use of those devices, occurred in or within subpoena power of the Central District of California. Sources of proof and third-party witnesses with knowledge of the infringing acts are concentrated in the Central District of California. Plaintiff counters that it intends to call residents of the Eastern District of Texas who traveled outside of the Eastern District to see a show employing the accused device, and offers no other proof or witnesses that reside in the Eastern District.

### III. LEGAL STANDARD

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The Federal Circuit applies regional circuit law to district court decisions related to venue. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying *Volkswagen II* to rulings on transfer motions out of this circuit). The Fifth Circuit has clarified the standard that district courts in this circuit should apply when deciding motions to transfer venue. *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The Fifth Circuit ruled that "§ 1404(a) venue transfers may be granted upon a lesser showing of inconvenience than forum non conveniens dismissals," and that "the burden that a

moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a forum non conveniens dismissal." *Id.* at 314 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The court held that the party seeking a transfer must show good cause why a court should not defer to the plaintiff's choice of forum. *Id.* at 315. Under the good cause standard, "when the transferee venue is not clearly more convenient, the plaintiff's choice should be respected." *Id.*

The court reiterated that the relevant factors to be considered for a § 1404(a) motion are the same as those used for forum non conveniens dismissals, which include both public and private interest factors. *Id.* at 315 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv.*, Inc., 321 F.2d 53, 56 (5th Cir. 1963)). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315. These factors are not necessarily exhaustive or exclusive, and none can be said to be of dispositive weight. *Id.* (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

## IV. ANALYSIS

The Defendants meet the threshold required for applying the *Volkswagen* standard. Every defendant admits to extensive contacts with the Central District of California related to the accused infringing activity. Analysis under § 1404(a) and *Volkswagen* necessitates transfer because the Central District of California is clearly more convenient for the witnesses and the parties, and holds a greater public interest in the resolution of this action.

### A. Threshold Requirement

As a threshold requirement, the party moving for transfer must establish that venue and jurisdiction would have been proper in the proposed transferee venue before the relative convenience of the plaintiff's chosen venue and the proposed transferee venue can be considered. *Volkswagen I*, 371 F.3d at 203. Defendants all allege ties to the Central District of California related to the manufacture, use, offer for sale, or sale of the accused infringing devices. Plaintiff does not contend that jurisdiction would be improper in the Central District of California. Accordingly, the court concludes that Defendants have met their threshold burden for transfer under 28 U.S.C. § 1404(a).

### B. 1404(a) Analysis

#### 1. Private Interest Factors

##### a. *Convenience of the Parties and Witnesses and Cost of Attendance for Witnesses*

The court first considers the convenience of the witnesses and parties. In *Volkswagen I*, the Fifth Circuit established the "100-mile" rule, which states that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional

distance to be traveled." 371 F.3d at 204–05.  Furthermore, in cases where potential witnesses are from widely scattered locations, a trial court should not consider its "central location . . . in the absence of witnesses within the plaintiff's choice of venue." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

Defendants assert that all parties, and their witnesses, are regularly in the Central District of California.  Steve Dixon and Kevin Bilida, who designed the accused systems, maintain residences in the Central District of California.  The inventor and sole employee of Plaintiff, Darrell Metcalf, resides in the Central District of California.  Plaintiff has provided no relevant witnesses in the Eastern District of Texas.  Although the Eastern District may be more central for some defendants, who have residences in Louisiana, New York, and California, Defendants' regular presence in the proposed transferee venue and complete absence from the present venue make travel to the proposed transferee venue more convenient.

Against this backdrop, with no identified potential witnesses within 100 miles of the original venue and multiple identified witnesses within 100 miles of the proposed transferee venue, the court finds that this factor weighs in favor of transfer.

      b. *The Availability and Location of Sources of Proof*

"That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316.  Even in the age of electronic discovery, considerations of physical evidence remain meaningful in § 1404(a) analysis.  *See id.*

Plaintiff has not alleged that any sources of proof reside in the Eastern District of Texas. Defendants allege that the bulk of documents and other sources of proof relating to the accused

devices resides in the Central District of California. The bulk of Plaintiff's documents likely also resides in the Central District of California, as Plaintiff's sole employee and the inventor of the asserted patent resides there. Accordingly, the court finds this factor weighs in favor of transfer.

          c.    *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Federal Rule of Civil Procedure 45(b)(2) allows a federal district court to compel a witness' attendance at a trial or hearing by subpoena. However, a court's subpoena power is subject to Rule 45(c)(3)(A)(ii), which protects nonparty witnesses who work or reside more than 100 miles from the courthouse. *See Volkswagen II*, 545 F.3d at 316.

Plaintiff argues that it intends to call residents of the Eastern District of Texas who attended shows where the accused infringing device was used. The court finds little merit in this argument. Neither Plaintiff nor Defendants contend that the allegedly infringing device has ever been used in the Eastern District of Texas, but the parties agree it is used regularly in the Central District of California. Spectators who have witnessed the use of the device who happen to live in the Eastern District of Texas are unlikely to have relevant non-cumulative information not possessed by spectators who have witnessed the use of the device who happen to live in the Central District of California. Witnesses of prior performances in the Central District of California are likely more numerous, so Plaintiff would be more likely to find willing witnesses without having to resort to subpoena issuance in the proposed transferee district.

Defendants have identified multiple third-party witnesses with evidence and information relevant to the infringing systems that reside within the subpoena power of the Central District of California. These witnesses include the designer of the system used by the L.A. Lakers, and the designers of several components of the system used by Timberlake and Spears.

On balance, this factor weighs in favor of transfer to the Central District of California.

            d.     *The Possibility of Delay and Prejudice if Transfer is Granted*

The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis "only in rare and special circumstances and when such circumstances are established by clear and convincing evidence." *Shoemake v. Union Pacific R.R. Co.*, 233 F.Supp.2d 828, 834 (citing *In re Horseshoe Entm't*, 305 F.3d 354, 358 (5th Cir.2002)). This is not a rare and exceptional case; therefore, this factor is neutral.

        **2.**     **Public Interest Factors**

            a.     *The Administrative Difficulties Caused by Court Congestion*

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved is a factor." *In re Genentech*, 566 F.3d at 1347. Of the factors weighed to determine whether transfer would be proper, court congestion is the most speculative. *Id.* Defendants make no argument on this factor, and Plaintiff concedes it is neutral. Accordingly, the court finds this factor neutral.

            b.     *The Local Interest in Adjudicating Local Disputes and the Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty*

Transfer may be appropriate where none of the operative facts occurred in the division and where the division has no particular local interest in the outcome of the case. *See In re Volkswagen*, 545 F.3d at 318. Defendants argue that the Eastern District of Texas has no connection to this lawsuit while the Central District of California is where both the patented technology and the accused infringing technology were developed, where several defendants are

9

located, and where all defendants regularly conduct business. Plaintiff counters that Defendants have offices or residences outside the Central District of California and regularly travel throughout the country for their business. Plaintiff contends that the citizens of the Eastern District have a localized interest because some may buy tickets to performances featuring the allegedly infringing device and some may have seen recorded performances featuring the allegedly infringing device on television.

The local interest articulated by Plaintiff is not particular to residents of the Eastern District of Texas. Accordingly, the court finds that the local interest of the Central District of California is greater than the local interest of the Eastern District of Texas and, therefore, concludes that this factor weighs in favor of transfer.

        c.     *The Familiarity of the Forum with the Law that will Govern the Case*

Both Plaintiff and Defendants concede that this factor is neutral.

        d.     *The Avoidance of Unnecessary Problems in Conflict of Laws*

Both Plaintiff and Defendants agree that this factor is inapplicable to this case.

        e.     *Judicial Economy*

Neither Plaintiff nor Defendants raised an argument concerning judicial economy. This action only recently had its first status conference, and the court has not yet expended significant resources understanding the legal and factual details of the case. Accordingly, this factor is neutral.

## V. CONCLUSION

Considering all of the "private" and "public" interest factors, Defendants have met their burden to show that the Central District of California is "clearly more convenient" than the Eastern District of Texas. All of the factors either weigh in favor of transfer or are neutral. As such, Defendants' motion to transfer venue is GRANTED (Dkt. No. 46) and all other pending motions are deferred to the transferee court.

SIGNED this 30th day of March, 2011.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE