Michael J. Niborski (State Bar No. 192111)
e-mail: mniborski@pryorcashman.com
**PRYOR CASHMAN LLP**
1801 Century Park East, 24th Floor
Los Angeles, California 90067-2302
Tel: (310) 556-9608
Fax: (310) 556-9670

Andrew S. Langsam (admitted *pro hac vice*)
e-mail: alangsam@pryorcashman.com
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036-6569
Tel: (212) 326-0180
Fax: (212) 515-6969

*Attorneys for Defendants*
Tennman Productions, LLC; Justin Timberlake;
Spears King Pole, Inc.; and Britney Spears

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARGE AUDIENCE DISPLAY SYSTEMS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>TENNMAN PRODUCTIONS, LLC, JUSTIN TIMBERLAKE, BRITNEY TOURING, INC., BRITNEY SPEARS, STEVE DIXON and MUSIC TOUR MANAGEMENT, INC.,<br><br>Defendants. | Case No. CV 11-03398 R (RZx)<br><br>**DECLARATION OF ANDREW S. LANGSAM IN SUPPORT OF DEFENDANTS' MOTION FOR RECOVERY OF ATTORNEYS' FEES, COSTS, AND EXPENSES**<br><br>[*Notice of Motion and Motion for Recovery of Attorneys' Fees, Costs, and Expenses and Memorandum of Points and Authorities filed concurrently herewith*]<br><br>Hearing:<br>Date: August 3, 2015<br>Time: 10:00 a.m.<br>Place: Courtroom 8<br>      Spring Street Courthouse |

# DECLARATION OF ANDREW S. LANGSAM

I, Andrew S. Langsam, hereby declare as follows:

1. I am a partner with the law firm of Pryor Cashman LLP ("Pryor Cashman"), counsel of record for Defendants Tennman Productions, LLC, Justin Timberlake, Britney Spears, and Spears King Pole, Inc. (collectively, "Defendants") in the above-captioned action. I have personal knowledge of the facts set forth in this Declaration, except for those matters stated to be based upon my information and belief, and if called upon to do so I could and would competently testify thereto.

2. I submit this Declaration in support of the concurrently filed Notice of Motion and Motion for Recovery of Attorneys' Fees, Costs, and Expenses.

3. Attached hereto as <u>Exhibit A</u> is a true a correct copy of U.S. Patent No. 6,669,346 (the "Patent"), the patent in suit.

4. Attached hereto as <u>Exhibit B</u> is a true and correct recent copy of the Texas Secretary of State's online summary records for the entity Large Audience Display Systems, LLC, retrieved on June 19, 2015.

5. Attached hereto as <u>Exhibit C</u> is a true and correct copy of the U.S. Patent Office's web page, retrieved on June 25, 2015, indicating the October 21, 2009 assignment of rights associated with the Patent.

6. Attached hereto as <u>Exhibit D</u> is a true and correct copy of the U.S. Patent Office's Bibliographic Data for the Patent, retrieved on June 30, 2015, indicating that the payment of the Patent's maintenance fee will be late (i.e., subject to a surcharge) as of July 1, 2015.

7. Attached hereto as <u>Exhibit E</u> is a true and correct copy of the search results for a business entity search performed for "Large Audience Display Systems" via the California Secretary of State's website.

8. Attached hereto as <u>Exhibit F</u> is a true and correct copy of the January 24, 2013 Declaration of Clyde Tichenor, an expert whom Plaintiff utilized during the course of the *inter partes* reexamination of the Patent before the U.S. Patent Office.

9. Attached hereto as <u>Exhibit G</u> is a true and correct copy of Plaintiff's Disclosure of Asserted Claims and Infringement Contentions, served in the Eastern District of Texas on March 8, 2011.

10. Attached hereto as <u>Exhibit H</u> is a true and correct copy of Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions, served in the Central District of California on January 12, 2012.

11. Attached hereto as <u>Exhibit I</u> is a true and correct copy of the *Inter Partes* Reexamination Request, filed on behalf of the Defendants and the Los Angeles Lakers, Inc. on November 11, 2011.

12. Attached hereto as <u>Exhibit J</u> is a true and correct copy of the Defendants' Comments and Response, served September 26, 2012, to the Patent Owner's August 27, 2012 Response to the U.S. Patent Office's July 27, 2012 Action Closing Prosecution.

13. Attached hereto as <u>Exhibit K</u> is a true and correct copy of the U.S. Patent Office's Non-Final Office Action, mailed November 26, 2012, wherein the Patent Office reopens the *inter partes* reexamination in response to Defendants' September 26, 2012 communication (attached hereto as <u>Exhibit I</u>) and to Plaintiff Patent Owner's August 27, 2012 communication.  Please note that <u>Exhibit K</u> is attached in two parts.

14. Attached hereto as <u>Exhibit L</u> is a true and correct copy of the U.S. Patent Office's Action Closing Prosecution, mailed May 14, 2013, setting forth the final findings of the Patent Office Examiners.  Please note that <u>Exhibit L</u> is attached in two parts.

15. Attached hereto as <u>Exhibit M</u> is a true and correct copy of the U.S. Patent Office's Decision on Appeal, mailed November 3, 2014, containing the unanimous decision of the Patent Trial and Appeal Board.

16. Attached hereto as <u>Exhibit N</u> is a true and correct copy of the Defendants' Comments, dated April 17, 2012 to the U.S. Patent Office's January 18, 2012 Non-Final Office Action and to Plaintiff Patent Owner's March 19, 2012 Response thereto.

17. Attached hereto as <u>Exhibit O</u> is a true and correct copy of a December 17, 2009 email from Michael G. Burk, Esq., counsel for Plaintiff, to Andrew S. Langsam, Esq.

18. Attached hereto as <u>Exhibit P</u> is a true and correct copy of a December 22, 2009 email from Andrew S. Langsam, Esq. to Michael G. Burk, Esq.

19. Attached hereto as <u>Exhibit Q</u> is a true and correct copy of a December 23, 2009 email from Michael G. Burk, Esq. to Andrew S. Langsam, Esq.

20. Attached hereto as <u>Exhibit R</u> is a true and correct copy of a January 26, 2010 email from Michael G. Burk, Esq. to Andrew S. Langsam, Esq.

21. Attached hereto as <u>Exhibit S</u> is a true and correct copy of detailed daily time records for every Pryor Cashman timekeeper who has performed legal services in connection with the defense of this case on behalf of Defendants Justin Timberlake and Tennman Entertainment, LLC under client/matter number 10217.00005. A more detailed explanation of these records is set forth below.

22. Attached hereto as <u>Exhibit T</u> is a true and correct copy of detailed daily time records for every Pryor Cashman timekeeper who has performed legal services in connection with the defense of this case on behalf of Defendants Britney Spears and Spears King Pole, Inc. under client/matter number 10634.00016. A more detailed explanation of these records is set forth below.

23. Attached hereto as <u>Exhibit U</u> is a true and correct copy of relevant records indicating the costs and expenses incurred during the course of this case on behalf of Defendants Justin Timberlake and Tennman Entertainment, LLC under client/matter number 10217.00005. A more detailed explanation of these records is set forth below.

24. Attached hereto as <u>Exhibit V</u> is a true and correct copy of relevant records indicating the costs and expenses incurred during the course of this case on behalf of Defendants Britney Spears and Spears King Pole, Inc. under client/matter number 10634.00016. A more detailed explanation of these records is set forth below.

25. Attached hereto as <u>Exhibit W</u> is a true and correct copy of the American Intellectual Property Law Association's 2013 Report of the Economic Survey.

## DECLARATION REGARDING REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES AND RELATED EXHIBITS

26. Pursuant to the agreement between Pryor Cashman and Defendants, Pryor Cashman professionals (including attorneys, paralegals, and other support staff) record their time spent working on matters on a contemporaneous and daily basis.

27. With the agreement of all Defendants, substantially all work performed in this action has been split on a 50/50 basis between client/matter numbers 10217.00005 (Defendants Justin Timberlake and Tennman Entertainment, LLC) and 10634.00016 (Defendants Britney Spears and Spears King Pole, Inc.). The minor discrepancies between the exact amount actually billed to each set of Defendants have inevitably arisen as a consequence of some issues unique to one or the other Defendants, thus legal work being conducted for that Defendant was

1  separately recorded. As stated above, true and correct copies of all relevant time
2  records are attached hereto as Exhibits S and T.

3      28. The date for the rendered legal services, the initials of the person
4  providing the services, a.k.a. the timekeeper, a description of the provided legal
5  services, and the time spent on the matter by the timekeeper, i.e., the relevant billed
6  information, contained in Exhibits S and T come directly from Pryor Cashman's
7  accounting system, and are an accurate reflection of information on invoices
8  submitted to and paid by Defendants all in connection with the defense of
9  Defendants by Pryor Cashman in this litigation. In some cases, the time and
10  dollars billed are zero, which reflects the fact that the number of hours actually
11  worked was written off before the bill was provided to Defendants.

12      29. The time records provided in Exhibits S and T have been reviewed
13  and some descriptions of the provided services redacted only for privilege (such as
14  attorney-client and work product) as necessary so as not to waive nor inadvertently
15  disclose the same.

16      30. The timekeepers in Exhibits S and T are identified by their initials.
17  Below is a table containing, in alphabetical order, the initials and names of each
18  timekeeper as well as each timekeeper's position within Pryor Cashman:

| Initials | Full Name | Position |
|---|---|---|
| AA | Anthy Antoniou | eDiscovery Manager |
| ASL | Andrew S. Langsam | Partner |
| BDR | Brad D. Rose | Partner |
| BEN | Barry E. Negrin | Partner |
| DC | Dasha Chestukhin | Associate |
| DZ | Darius Zolnor | Associate |

5

| Initials | Full Name | Position |
|---|---|---|
| EC | Erich Carey | Associate |
| EW | Elizabeth Warner | Associate |
| JRK | James R. Klaiber | Partner |
| JT | Jessica Tartanella | Court Clerk |
| LD | Laurie DeCanio | Paralegal |
| LED | Leighton E. Dellinger | Associate |
| MAT | Mark A. Tamoshunas | Of Counsel |
| MJN | Michael J. Niborski | Partner |
| OD | Orlando Dominguez | Litigation Support Analyst |
| PMA | Perry M. Amsellem | Partner |
| PZ | Philippe Zylberg | Special Counsel |
| RJD | Robert J. deBrauwere | Partner |
| RLM | Robert L. Michael Jr. | Paralegal |
| RO | Ryan Osterweil | Associate |
| RR | Rebecca Rothkopf | Associate |
| SAL | Suzie A. Latiff | Managing Clerk |
| SEB | Sarah E. Bell | Associate |
| SG | Stephanie Fereaud | Paralegal |
| SK | Stephanie Kline | Associate |
| YE | Yamilet Echeverria | Associate |

31.     I have been the lead counsel for this action since its inception in 2009. I have more than 35 years' experience as a patent attorney, and have handled complex U.S. patent litigation and related intellectual property matters (transactional, prosecution, and litigation) throughout that time. I have never been

6

sanctioned nor censured nor have any of my clients nor I been the subject of an order requiring us to pay attorneys' fees to an opposing party. I am a graduate of Carnegie-Mellon University (B.S. 1973) and George Washington University's National Law Center (J.D. 1976). I am admitted to practice in the State of New York and was, for years, also a member of the Bar of the Commonwealth of Virginia and of the District of Columbia. I let the latter two lapse only as a consequence of my recent absence from legal work in those jurisdictions. I am still a member in good standing of the Bar of the State of New York, and am admitted to practice before the U.S. Second Circuit Court of Appeals and the U.S. District Court for the Southern District of New York. I am admitted to the U.S. District Court for the Central District of California *pro hac vice*. I am also a practicing and active U.S. patent attorney, registered to practice before the U.S. Patent Office under Reg. No. 28,556. I have been a practicing U.S. patent attorney in the U.S. Patent Office for over 38 years and have been litigating in U.S. district courts on U.S. patent matters for about 35 years. Many of my colleagues during my years of working together, here at Pryor Cashman and while I was a partner at other law firms, frequently call me for my advice and counsel.

32. I have taken lead on all matters relating to this case, including the defense to its initiation by Plaintiff in the U.S. District Court for the Eastern District of Texas, the reexamination proceedings in the U.S. Patent Office, the motions to transfer and to stay, as well as the recent opposition to Plaintiff's motion to lift the stay and re-open the case. I have received assistance and support from a number of Pryor Cashman attorneys and other professionals in my handling thereof, but no other single attorney or professional has expended nearly as much time nor effort as me in connection with handling this case. There is no established core team associated with this case beyond me. Rather, I would, as needed, draw upon and ask for help, work, and/or legal advice from our available

other partners, associate attorneys, paralegals, and clerks at Pryor Cashman. That is the reason why the list of personnel providing services to these Defendants in this case includes a variety of different people. The Defendants, however, never were billed for nor paid for any time spent for unnecessary "knowledge for ramping up" to obtain a proper base by the others to provide services as I was always the point and lead attorney and was fully knowledgeable about the case's facts and status at all times.

33. In 2009, I billed at an hourly rate of $595, which increased annually to a final hourly billing rate, in 2015, of $690. However, due to Pryor Cashman's relationship with Defendants, courtesy discounts were periodically offered and applied, ultimately totaling approximately 15% for each set of Defendants. When discounted by this amount, my adjusted hourly billing rate was about $505.75 in 2009, increasing annually to $586.50 in 2015.

34. My rates are on the low end of reasonable in New York, where Pryor Cashman is located. *See, e.g.*, *Regulatory Fundamentals Group LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13 Civ. 2493 (KBF), 2014 U.S. Dist. LEXIS 135600, at *3 (S.D.N.Y. Sept. 24, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour."). Moreover, these rates are reasonable in light of the prevailing average rates in the Los Angeles area as well. *See, e.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063, at *47 (C.D. Cal. Mar. 24, 2015) ("[T]he American Intellectual Property Law Association ('AIPLA') Report of Economic Survey identified the median intellectual property partner billing rate in Los Angeles as $575 per hour in 2012, and the median Los Angeles associate billing rate as $395.").

35. Due to the fact that this action has been ongoing for over six years and has involved complex discovery, legal and technical issues before both this Court

and the U.S. Patent Office, there have been a total of 26 attorneys and other professionals who have provided assistance with the case at some point.

36. The hourly billing rate for every other Pryor Cashman attorney and other professional is indicated in-line with each charge. Additional background information regarding particular timekeepers can be provided by Pryor Cashman upon request.

37. Although Defendants are seeking attorneys' fees, "[w]ork performed by paralegals may be compensated as part of an attorney's fee award. . . . . Similarly, work performed by litigation support staff that directly support the substantive litigation . . . is compensable as part of an attorneys' fee award." *Perfect 10*, 2015 U.S. Dist. LEXIS 54063, at *62. Therefore, Defendants properly include timekeepers other than attorneys.

38. As the lead attorney for Defendants' matters in this case, I reviewed all time entries by attorneys and professional staff, including the rate and amount of time billed for their work. In my experience, the hourly rates charged by each of the timekeepers listed on Exhibits S and T are reasonable and well within market rates, particularly given the courtesy discounts applied to Defendants' invoices.

39. The time shown in Exhibits S and T were actually expended as well as totally reasonable and necessary in light of the issues raised by Plaintiff's lawsuit. All time listed was actually billed to and paid by Defendants. There has been no duplicative billing of fees nor costs but, rather, Pryor Cashman split equally between the Defendants (and their entities) the incurred fees and costs.

40. Filed concurrently herewith are Exhibits U and V, which list the costs and expenses incurred by Defendants in connection with this case. Similar to the attorneys' fees, I have reviewed the costs and expenses as they were invoiced to

1 | Defendants and can confirm that they were all expended, entirely reasonable and necessary.

41. Defendants are seeking reimbursement of only those costs and expenses listed in <u>Exhibits U</u> and <u>V</u> that were actually billed to, and paid by, Defendants.

## DECLARATION REGARDING FACTS IN SUPPORT OF MOTION

42. As stated above, I have been lead counsel on this case since its inception, therefore I am familiar with all of the facts of the case. I have likewise handled all settlement discussions that have occurred during the entire pendency of this case.

43. Since the commencement of this action, Plaintiff has consistently stalled providing Defendants with a settlement offer despite assurances that such an offer would be forthcoming.

44. Plaintiff refused to even engage in any settlement discussions unless and until Defendants first executed a confidentiality agreement that was entirely superfluous, since all settlement discussions are already protected under Federal Rule of Evidence 408(a), as Defendants indicated to Plaintiff.  (*See* Ex. O.)  Nevertheless, Plaintiff refused to discuss settlement until this agreement was executed.

45. Defendants, eager to begin settlement discussions, executed Plaintiff's requested confidentiality agreement despite not believing the same to be necessary.  (*See* Ex. P.)  Defendants did so on the understanding expressly provided by Plaintiff's attorney, that, once the confidentiality agreement was executed, Plaintiff would immediately provide a concrete settlement demand to Defendants.  However, no such demand was forthcoming.

46. Instead of making its promised settlement offer, Plaintiff then demanded that Defendants provide the amount of gross revenues for the

Defendants' concerts, during which the claimed invention of the Patent was alleged to be used. (*See* Ex. Q.)

47. Although Defendants knew that gross revenues were utterly irrelevant to Plaintiff because such revenues could not even theoretically form the basis of Plaintiff's damages calculations, Defendants nevertheless, as a show of good faith, directed Plaintiff to various websites estimating Defendants' gross revenues. Instead of using those figures to come up with a reasonable settlement demand, Plaintiff pushed back and demanded that Defendants certify these estimates, albeit irrelevant to the issue of patent damages, to be within 5% of the actual gross revenues. (*See* Ex. R.)

48. Moreover, on numerous occasions, Plaintiff, through and by its counsel, Michael G. Burk, Esq., ominously warned Defendants that the case would be very expensive for Defendants to defend and that Defendants should therefore settle.

I declare under penalty of perjury that the foregoing is true and correct. This declaration is executed on June 30, 2015, at New York, New York.

*/s/ Andrew S. Langsam*
Andrew S. Langsam