CLOSED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARGE AUDIENCE DISPLAY SYSTEMS, LLC, | CASE NO. CV 11-3398-R |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR RECOVERY OF ATTORNEY'S FEES, COSTS, AND EXPENSES |
| v. | |
| TENNMAN PRODUCTIONS, LLC, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion for Recovery of Attorney's Fees, Costs, and Expenses (Dkt. No. 258) which was filed on April 14, 2017 pursuant to this Court's order for further briefing (Dkt. No. 257).

This Court has already determined that the case is exceptional under 35 U.S.C. Section 285. However, following the remand from the Federal Circuit, the Court required a more thorough analysis of the requested rates and hours than previous time and space limitations had allowed. Accordingly, at the Court's request, the parties have filed more detailed briefing supporting and opposing the requested rates and hours of Defendants' attorneys. Upon this record, and the previous record regarding attorney's fees, the Court is now able to calculate the lodestar figure.

Defendants argue that they are entitled to an award of $755,925.86 in attorney's fees and $22,511.52 in costs. If a court finds that a case is "exceptional" under § 285, it may award fees that "bear some relation to the extent of the misconduct." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).

Attorney's fees awarded under § 285 must "bear some relation to the extent of the misconduct." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001) (citations omitted). "[T]he Federal Circuit has identified certain circumstances in which full fees may not be warranted: (1) when litigation conduct is the sole basis for deeming a case 'exceptional,' and (2) cases where the injured party only partially prevails on the patent claims at issue." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015). District courts are not required to tie fees directly to each instance of exceptionality "because it is the 'totality of the circumstances,' and not just discrete acts of litigation conduct, that justify the court's award of fees." *Homeland Housewares, LLC v. Sorensen Research*, 581 Fed.App'x 877, 881 (Fed. Cir. 2014).

Plaintiff's suggestion that any fees awarded in this case must "only compensate for the <u>extra</u> legal expense caused by the litigation misconduct" is unpersuasive. First, litigation conduct was not the sole basis for the finding of exceptionality. This Court found that the case was exceptional because Plaintiff's efforts to manufacture venue, the use of a privileged email, and because of the overall weakness of the merits of Plaintiff's positions taken at the Patent and Trademark Office. It was not only Plaintiff's conduct throughout the litigation, but also the objective weakness of Plaintiff's proposed constructions before the Patent Trial and Appeal Board. *See Kilopass*, 82 F. Supp. 3d at 1166 ("While Kilopass was found to have engaged in litigation misconduct, that was not the sole basis for deeming this case exceptional. Sidense ultimately prevailed on every claim asserted by Kilopass, which the Court characterized as 'exceptionally meritless' and 'objectively baseless.'"). Second, this Court held that Plaintiff's misconduct

permeated throughout the entirety of this matter. From the start of this litigation until the motion for attorney's fees, Plaintiff's conduct has stood out from the usual case. Accordingly, Defendants are entitled to their full fee as calculated by the lodestar method.

Courts awarding fees under § 285 calculate the attorney's fees based on the traditional lodestar method. The lodestar figure is calculated by multiplying the hours reasonably expended by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citation omitted).

To determine a reasonable hourly rate, courts are guided by the prevailing market rate. *Blum*, 465 U.S. at 895. Courts look to the attorneys' skill, experience, and reputation as compared to others in the market. *Id.* at 896. In determining the hours expended, Courts only award fees for "hours reasonably expended on the litigation" excluding "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

On remand, the Federal Circuit specifically instructed that this Court determine the prevailing market rate for California despite Defendants' lawyers' location in New York and "determine whether it was reasonable for seven partners to have billed 79 percent of the total hours on this case[.]" (Dkt No. 249 at 12-3). Defendants contend that they should be awarded the full amount of their requested fees. Plaintiff argues that Defendants failed to provide sufficient evidence to prove the associates' hourly rate and that the hours requested were redundant, unspecific, and excessive.

In its previous order, the Court found that Mr. Langsam's hourly rate ranging from $595 to $690 was reasonable. (Dkt. No. 257). In addition to Mr. Langsam, six partners, two counsel, and nine associates billed on the matter. Each of the six partners billed at rates lower than those approved by the court in *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484 (C.D. Cal. March 24, 2015). *Id.* at *16-21. Brad Rose billed at the highest hourly rate of any partner on the matter. Still, Mr. Rose's average rate of $744.55 per hour is lower than the range approved for the senior partner in *Perfect 10*. Furthermore, Mr. Rose is a prominent litigator in the entertainment

3

intellectual property field and recognized as a top lawyer by legal publications. Michael Nibroski and Barry Negrin have 18 and 19 years of legal experience, respectively. Both are partners in the patent group. Mr. Nibroski's average rate of $572.04 and Mr. Negrin's average rate of $501.25 are each supported by their experience and lower than the comparable rates approved in *Perfect 10*. Finally, the remaining partners on the case, Klaiber, Amsellem, and deBrauwere each had more than 15 years of experience, and billed at a rate lower than partners with comparable experience in *Perfect 10*. The rates are also in line with economic surveys compiling average rates billed by lawyers of similar qualifications. Though the surveys have their limitations, they further support the reasonableness of the attorneys' rates. The 2013 AIPLA survey indicates that the average hourly rate charged by intellectual property lawyers in Los Angeles is $557 per hour and contains average rates broken down by years of experience. Similarly, the 2015 Real Rate Report indicates that the median rate for intellectual property partners was $654.58 per hour.

The associates also billed at an hourly rate in line with the prevailing market rate. The two senior associates, with 7 and 6 years of experience, billed at an average rate of $411.17 and $375.00, respectively. In *Perfect 10*, associates with 7 years of experience billed at an hourly rate of $640. Similarly, junior associates billed at an average hourly rate between $385.00 and $296.07 per hour. Each rate is lower than those approved in *Perfect 10*. According to the 2015 Real Rate Report, the median rate for intellectual property associates was $450 per hour.

Plaintiff argues that Defendants "fail[] to identify any record evidence proving the qualifications, experience and role of the" timekeepers other than Mr. Langsam. (Opp. at 3). Plaintiff is incorrect. Defendants compiled charts detailing the names and experience of each lawyer who billed any time on the matter. They provided three pages of argument laying out the qualifications and role of partners who billed on the matter. Relying on other decisions in this district as well as quantitative studies by legal publications, the Court is able to determine that each of the lawyers and staff who billed any time on this case was qualified and skilled relative to others in the market. Therefore, the attorneys' rates are reasonable compared to the prevailing market rates for lawyers of similar experience and skill.

Of the group of lawyers billing on the matter, Mr. Langsam accounted for 62% of all hours

billed. No other lawyer accounted for even 10%. The next highest biller on the matter was Michael Nibroski. He was the lead attorney on initial discovery and the local Los Angeles counsel. Mr. Rose was the primary contact for Plaintiffs and the reason they were clients of the firm. Together, the team of Langsam, Nibroski, Negrin, Rose, and two associates accounted for more than 90% of all the fees billed on this case. Partners billed a total of 67% of all hours in the case. The Federal Circuit appears to have mistaken the total percentage of *fees* billed by partners, which is 79%, for the total percentage of *hours* billed on the case. Defendant asserts that Mr. Langsam and other partners performed such a substantial portion of the work for two main reasons. First, Pryor Cashman does not hire associates who specialize in patent litigation. Second, Mr. Langsam was able to save time and client money by primarily handling the case thereby not requiring duplicative acquaintance with the case and law by associates on the case. This Court is satisfied that the amount and proportion of time billed by partners in this matter was reasonable. The lack of specific patent associates at the firm decreases the cost savings which may have been possible by delegating work from a partner to associates. Patent litigation is a unique practice area which would require significant time for an unfamiliar associate to gain a base level of familiarity and understanding. Therefore, Mr. Langsam's decision to handle the majority of the litigation on his own was reasonable and plausibly saved his clients money.

Plaintiff argues that, for a variety of reasons, Defendants failed to meet their burden to show that the hours expended on the case were reasonable. Plaintiff claims that Defendants engaged in block billing, failed to provide sufficient detail to assess the hours, and used partners for tasks which should have been reserved for associates or staff.

Defendants billing records are thorough and provide the Court with a substantial basis by which to judge the reasonableness of the hours expended. "'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). The concern with block billing is that it makes it more difficult to determine the amount of time spent on each individual task. *Id.* Even a cursory review of Defendants' billing records show that the attorneys on the matter bill in increments less than three

hours in the majority of entries. Furthermore, the descriptions of work performed in the billed time are consistently thorough. Oddly, Plaintiff also laments Defendants' lawyers billing in half-hour increments. (Opp. at 7). It is unclear how Plaintiff would recommend that the lawyers bill their hours if both large and small increments make it impossible for the Court to assess the hours' reasonableness. Regardless, even the records which contain larger blocks of time provide substantial detail regarding the work performed by the lawyer. For example, an entry on September 25, 2012 indicates that Mr. Langsam spent 4.5 hours on the following: "Review Action Closing Prosecution in the Reexamination of the LADS patent, review comments and responses by LADS, prepare a set of Responses and Comments, including section on IDS, on language of claims, on Olympics, etc. Contact with client's representative [redacted]." This description contains a detailed review of the tasks Mr. Langsam preformed. Furthermore, the use of redaction in this instance, as with the billing records on the whole, does not prevent this Court from determining the reasonableness of the hours billed.

Though the general billing practices of the Pryor Cashman lawyers were sufficiently detailed and thorough, there are instances where lawyers, and specifically partners, spent time billing on matters more appropriately left to associates or staff. For example, as the Federal Circuit noted, Mr. Nibroski billed multiple hours filing documents and preparing pro hac vice applications. (*See e.g.* Dkt. No. 224-2, pg. 66, 99). Similarly, Mr. Langsam billed time for obtaining copies of DVDs and reviewing websites. (*See e.g.* Dkt. No. 224-2, pg. 5, 103). These tasks are more appropriately billed at the rate of an associate or support staff. *Missouri v. Jenkins by Ageyi*, 491 U.S. 274, 288 n.10 (1989). Defendants fail to explain the issues identified by the Federal Circuit in either of their post-appeal filings. After a review of the billing records, the Court finds that a minor reduction is warranted. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). The Court will reduce 5 percent of the hours billed by Mr. Langsam and Mr. Nibroski from their average hourly rate to the average hourly rate requested by a paralegal at Pryor Cashman. Such a reduction will appropriately

compensate for the work performed by the two partners which could have been performed by someone billing at lower hourly rate. Accordingly, the Court will reduce the requested fees by a total of $18,913.52.[1]

Finally, Plaintiff argues that Defendants failed to "prove up" their costs. Plaintiff does not explain how the costs were unreasonable, but rather claims that Defendants failed to meet their burden to support the costs. Defendants' counsel declared that all of the costs were all necessary and actually billed to the clients. Furthermore, the records of the costs include descriptions which explain why the costs were incurred. Each cost was reasonable. Plaintiff's complaints regarding payments to other law firms as "professional fees" is unavailing as this complex case was located in two states requiring consultation with local lawyers in both. Additionally, the case entailed a number of law firms. It was reasonable and appropriate for Defendants to consult with them. Accordingly, the Court finds that the costs requested by Defendants are reasonable.

**IT IS HEREBY ORDERED** that Defendants' Motion for Attorney's Fees, Costs, and Expenses (Dkt. No. 223) is GRANTED in the amount of $737,012.34 in fees and $22,511.52 in costs as stated this Order.

Dated: June 2, 2017.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

---

[1] Five percent of Langsam's total hours is 18.05 hours. Multiplied by his average rate of $635.43 equals $11,473.64. A paralegal billing an equivalent amount of hours at the rate of $172.98 equals $3,122.28. The difference between the two being $8,352, multiplied by 2 (for the two defendants), equals $16,702.72. The same calculation for Nibroski equates to $2,210.80. The combined total reduction is $18,913.52.

7