

**RECEIVED**
CLERK, U.S. DISTRICT COURT

8/20/18

CENTRAL DISTRICT OF CALIFORNIA
BY: _____MAT_____ DEPUTY

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**LARGE AUDIENCE DISPLAY SYSTEMS, LLC,**
*Plaintiff-Appellant*

v.

**TENNMAN PRODUCTIONS, LLC, JUSTIN TIMBERLAKE, BRITNEY SPEARS, SPEARS KING POLE INC.,**
*Defendants-Appellees*

**STEVE DIXON, MUSIC TOUR MANAGEMENT, INC.,**
*Defendants*

_____

2017-2266
_____

Appeal from the United States District Court for the Central District of California in No. 2:11-cv-03398-R-RZ, Judge Manuel L. Real.

_____

Decided: August 20, 2018
_____

DWAYNE K. GOETZEL, Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C., Austin, TX, argued for plaintiff-appellant. Also represented by RYAN T. BEARD; MICHAEL G. BURK, The Burk Law Firm, P.C., Austin, TX.

ANDREW SOL LANGSAM, Pryor Cashman LLP, New York, NY, argued for defendants-appellees.

_____

Before O'MALLEY, LINN, and HUGHES, *Circuit Judges.*

LINN, *Circuit Judge.*

Large Audience Display Systems, LLC ("LADS") appeals the award of fees under 35 U.S.C. § 285 after remand. The district court awarded all attorney fees and costs incurred from the beginning of the case in the amount of $737,012.34 in fees and $22,511.52 in costs. This amount included fees relating to the district court litigation in Texas and California, and those associated with the reexamination proceeding at the U.S. Patent and Trademark Office ("PTO").

On appeal, LADS challenges both the district court's exceptionality determination and the amount of the fee award. Because the district court, considering the totality of the circumstances, did not abuse its discretion in finding the case exceptional or in awarding fees for the entire litigation, we *affirm*.

## I. EXCEPTIONALITY

The district court concluded that the case was exceptional primarily on three grounds: (1) LADS's opposition to the defendants' motion to transfer from the Eastern District of Texas; (2) LADS's assertion of "objectively weak" arguments to the PTO during reexamination,; and (3) LADS's use of a "clear[ly]" privileged email between defendant Tennman and its attorneys in its opposition to LADS's motion for attorney fees. LADS challenges the exceptionality of each of these bases, and also argues that Tennman's own conduct precludes a finding of exceptionality here. We address each of these arguments in turn.

A

We begin with LADS's opposition to the motion to transfer. The district court found that LADS was formed as a corporation only two days prior to the filing of this lawsuit in Texas. The court also found that LADS had never conducted any business in Texas—indeed, had never even picked up the keys to the office—and had failed to pay its corporate taxes for three years, which lead to a suspension of its corporate form. The court further found that LADS's corporate status was not reinstated until shortly after Tennman brought LADS's corporate status to the court's attention.[1] Based on these findings, in which we see no error, the district court concluded that "[p]laintiff was formed in order to defeat a change of venue and keep the case in the Eastern District of Texas." The district court acted within its discretion in reaching that conclusion in the context of the totality of circumstances surrounding this case. *See Octane Fitness LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

LADS argues that the law of the case precluded the district court from considering LADS's corporate formation at all in rendering the exceptionality determination on remand. We disagree. In *Large Audience Display Systems, LLC v. Tennman Prods., LLC.*, 660 F.App'x 966 (Fed. Cir. 2016) (per curiam) ("*LADS I*"), we cautioned that LADS's formation in Texas could not be considered as an attempt to *create jurisdiction* in Texas. The district court was free, however, to consider "the totality of the circumstances . . . including . . . [LADS's] opposition to the

---

[1] We see no error either in the district court's categorization of LADS's inactive corporate status as "ceasing to exist," or in the district court's reliance on LADS's three-year forfeiture as evidence that LADS's opposition to transfer was exceptional.

motion to transfer venue." *Id.* at 972. The district court did what we expressly permitted when this case was last before us. We have carefully considered LADS's other arguments relating to its opposition to transfer and find them to have no merit.

### B

Next, LADS challenges the district court's finding that LADS's claim construction arguments pressed in reexamination were objectively unreasonable. LADS also argues that the district court erred by considering only the unreasonableness of two of the seven constructions, rather than all of them, and that its positions were not unreasonable.

In *LADS I*, we noted the differences in the adjudicatory processes and claim construction standards followed by the PTO and the district courts. *Id.* at 971. We also instructed the district court to consider "the objective reasonableness of LADS's claims given the standards and burdens that apply in district court, including the reasonableness of LADS's proposed claim constructions." *Id.* at 972. The district court followed these instructions here. In a response filed at the PTO, LADS argued that "positioning means" excludes a static base because that content was disclaimed during prosecution. Based on that disclaimer, LADS argued that a prior art reference showing a screen fixed to a building—a static base—does not anticipate. In that same response, however, LADS explained to the examiner that "the building itself serves as a primary positioning means of the screen-display(s)." The district court concluded that this explanation wholly undermined LADS's prosecution history argument. The district court also concluded that LADS's argument to the PTO that "large audience" necessarily includes hundreds of people, despite an example in the patent showing fourteen people, was objectively unreasonable. We see no clear error in those conclusions. Moreover, that the

district court only analyzed two of LADS's seven claim construction arguments does not undermine its finding that LADS's conduct was exceptional.

## C

Next, LADS argues that the district court erred by considering LADS's use of a privileged email after the case was dismissed to support its exceptionality finding. LADS argues that its use of the email was reasonable and unexceptional because it did not know the email was privileged, did not receive notification that the email was privileged before its use, and did not know that the recipients of the email were Tennman's attorneys. LADS also argues that: (1) the email was used after the dismissal of the case, and only to rebut assertions that the case was frivolous; (2) the timing of the email led LADS reasonably to conclude that the email was given over in an attempt to promote settlements; and (3) that Tennman did not satisfy its burden to show that the email was privileged.

The district court found that "[i]t was clear from the face of the email that it was intended only for the Defendants and their counsel." The email was sent between Tennman's attorneys—Andrew Langsam (with a pryor-cashman.com domain), Gary Stiffelman (with a zif-frenlaw.com domain), and Brad Rose (with a pryorcashman.com domain), and contained no salutation to LADS's counsel, Michael Burk. Moreover, the top-level email is sent in response to nested emails, which could not reasonably be interpreted to have been intended for LADS's counsel. There is little doubt that any reasonable attorney would have recognized this email as privileged, if not immediately during document review, then certainly when LADS submitted the email as part of its briefing on the issue of attorneys fees. We see no clear error in the district court's consideration of LADS's use of this email as a basis for its exceptionality finding. LADS's argument that the email was not privileged, or that Tennman

improperly failed to follow the proper procedure for clawing back the document are baseless.

### D

LADS additionally contends that Tennman's own bad acts undermine the exceptionality finding. These alleged bad acts are: (1) changing how Tennman calculates its 15% fee discount (either applied to hours or to billing rates); (2) including a single fee entry by an associate for "Preparation of Litigation Hold Letter" after Tennman had already issued a document preservation hold; (3) making improper arguments about the Olympic prior art and the attempts to bring this reference to the attention of the PTO; and (4) misrepresenting the location of defendants and witnesses as all within California. We see no merit in any of LADS's arguments. First, the discount calculation presumably would have resulted in the same fee, and LADS has failed to explain why this was error. Second, Tennman reasonably explained that the litigation hold letter entry referred only to defendants added after the litigation hold was placed. Third, although Tennman's arguments with respect to the submission of the Olympic prior art were rejected, LADS has not shown that those arguments were unreasonable. Finally, even assuming that Tennman's assertion that all the Defendants, witnesses, and evidence were "primarily located and resided in the Los Angeles area" was an overstatement, this would not indicate that the district court abused its discretion in finding LADS's conduct here to be exceptional.

While we may have reached a different conclusion regarding exceptionality if we were evaluating the parties' arguments in the first instance, our review is limited to whether the district court, in considering the totality of circumstances, abused its discretion in reaching the conclusion that LADS's conduct was exceptional under § 285. *See Octane Fitness*, 134 S. Ct. at 1756. On that

standard, we see no reason to disturb the district court's decision.

## II. AMOUNT OF THE AWARD

LADS next argues that the district court erred in awarding Tennman *all* of its requested fees, rather than those directly caused by LADS's exceptional conduct. To support this proposition, LADS relies on *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013), in which we explained that fees should "compensate a defendant for attorneys' fees it should not have been forced to incur." Tennman responds that nothing in § 285 requires a direct nexus between the exceptional litigation misconduct and the award, and that full fees are unavailable only where particular litigation misconduct forms the basis of the exceptional case determination and where the moving party only prevails on *some* of its patent claims, but that neither of these situations applies here. *See Beckman Instr., Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553–54 (Fed. Cir. 1989) ("[T]he amount of fees awarded to the 'prevailing party' should bear some relation to the extent to which that party actually prevailed."); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed. Cir. 1992) ("[W]hen attorney fees under 35 U.S.C. § 285 are awarded solely on the basis of litigation misconduct, the amount of the award must bear some relation to the extent of the misconduct.").

The district court applied a *Lodestar* analysis, which provides a presumptively reasonable fee award. *See Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016). In addition to this presumption, we note that the district court has "considerable discretion" to determine the amount of fees under § 285, owing to its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Bywaters v. United*

*States*, 670 F.3d 1221, 1228 (Fed.Cir.2012) (internal quotations omitted).

The district court did not abuse its considerable discretion in awarding fees for the entire litigation. To begin, nothing in § 285 or our case law precludes such an award. *See Homeland Housewares, LLC v. Sorensen Res.*, 581 F. App'x 877, 881 (Fed. Cir. 2014) (non-precedential) (not requiring the "granularity" of limiting "the award to the costs that Homeland incurred in responding to specific acts of litigation misconduct"). The district court concluded that the factual bases for the exceptionality finding—from the venue fight, to the unreasonable claim constructoins, to the use of the privileged email—"permeated" the entire litigation. As we have recognized, full fees may be awarded in such circumstances. *See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013) (affirming full fee award based on conduct "that was 'pervasive' enough to infect the entire litigation" (internal citation omitted)); *see also In re Rembrandt Techs. LP Patent Litig.*, No. 17-1784, 2018 WL 3862644 (Fed. Cir. Aug. 15, 2018) at *18–19 (rejecting a full fee award because the district court made no finding that the exceptional misconduct "so severely affected every stage of the litigation that a full award of attorney fees was proper" (quoting and distinguishing *O2 Micro*, 726 F.3d at 1369)). As discussed above, none of these findings were clearly erroneous.

LADS's cited authorities are inapposite. Unlike the prevailing party in *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. 1989), Tennman prevailed on every one of its key arguments. *See Beckman*, 892 F.2d at 1554 (when one party prevails on some claims and the other party prevails on other claims, "this fact should be taken into account when determining the amount of fees under § 285"). Moreover, the exceptionality determination here was not limited to particular acts of litigation misconduct. *See Read Corp. v. Portec, Inc.*, 970

F.2d 816, 831 (Fed. Cir. 1992) (noting as a remand instruction that an attorney fee award based on a single act of litigation misconduct would only allow fees to be awarded that "bear some relation to the extent of the misconduct"). In any event, we find no clear error in the district court's determination that LADS's exceptional conduct here "permeated throughout the entirety of this matter," such that the fee award, in fact, related to the extent of the misconduct. We discern no abuse of discretion in the district court awarding full fees.

Finally, LADS argues that the district court's *Lodestar* analysis was flawed because: (1) there is a discrepancy between the $733,414.34 in fees sought by Tennman's Fee Motion and the $755,925.86 in fees awarded by the district court; (2) Tennman failed to prove its hourly rates, because the rates of timekeepers other than Langsam were supported solely by inadmissible hearsay from attorney website bios and the 2013 AIPLA Survey previously found unreliable by the Central District of California in *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2015 WL 1746484 (C.D. Cal. March 24, 2015); and (3) the district court did not consider the reasonableness of hours billed, did not take into account hours jointly billed by defendant The Lakers, did not sufficiently discount the disproportionate partner billings, and made various errors with respect to particular entries and allowing block billings. Finally, LADS argues that the district court clearly erred in the amount of costs awarded.

Tennman admits that it inadvertently added the costs to its fee request on remand twice, resulting in $755,925.86 plus costs of $22,511.52, instead of $733,414.34 plus costs for a *total* award of $755,925.86. In light of this admission, the proper award should be a total of $737,012.34, broken down as follows: $733,414.34 (fees incurred by Tennman) less $18,913.52 (the district court's discount for associate-level work performed by partners) plus $22,511.52 (costs). We therefore modify

the district court's award to reflect a *total* award of $737,012.34, which includes both fees and costs.

The district court did not otherwise abuse its discretion or clearly err in any fact-finding relating to its *Lodestar* analysis. In *LADS I*, we instructed the district court to engage in a proper *Lodestar* analysis to determine reasonable attorney's fees, rather than merely conclude that the fees Tennman requested were reasonable because they were "below average" for a typical patent infringement suit of this size. 660 F. App'x at 972-73. The district court followed these instructions by calculating the reasonable number of hours and reasonable rates of Tennman's attorneys. Moreover, Langsam's declaration set forth the qualifications of each of Appellee's attorneys. LADS has failed to show any clear error in the district court's hourly rate determination.

LADS has also failed to show any clear error in the district court's calculation of the number of hours for which fees were awarded. LADS does not explain why the joint defense with respect to the Lakers resulted in a higher than reasonable fee. Also, the district court discounted certain entries to take into account partner hours for associate work. Further, the district court adequately analyzed and only then accepted Tennman's billing practices. The district court did not clearly err in its calculation of costs.

The district court performed a proper *Lodestar* analysis. The award is modified to $737,012.34, inclusive of fees and costs.

### III. Fees for Reexamination

At oral argument and by court order, we requested a separate accounting of fees spent on the reexamination proceedings at the Board and those spent on the district court litigation. The parties filed a joint response, with conflicting accountings.

Tennman also notes, in response to this court's *sua sponte* questioning, that fees incurred at the PTO were "ordinarily necessary" to the district court litigation, and therefore are recoverable under § 285. *See Webb v. Dyer Cty. Bd. of Election*, 471 U.S. 234, 105 S.Ct. 1923 (1985) (explaining that "ordinarily necessary" ancillary fees are recoverable); *PPG Indus., v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568 (Fed. Cir. 1988) (reversing the district court's denial of attorneys' fees for certain *inter partes* PTO proceedings, as those proceedings were "useful and of a type ordinarily necessary" and "substituted for the District Court litigation on all issues considered by the PTO and the Board"). We need not decide whether the fees here are recoverable under § 285, because LADS waived any challenge to the inclusion of those fees on the basis of *Webb* and *PPG* by failing to make such an argument either to the district court or in its initial briefing to this court.

For the reasons set forth above, the judgment of the district court is affirmed-as-modified.

## AFFIRMED-AS-MODIFIED

COSTS

No costs.